IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA COMMUNITY SUPPORT AND SOLUTIONS, INC., GARMAI KENNEDY, Individually and as Surviving Parent of DAVID SCOTT KOLUBAH, III, and ROGER KIRSCHENBAUM, Administrator of the Estate of DAVID SCOTT KOLUBAH, III,<br><br>Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff First Mercury Insurance Company ("First Mercury") shows this Honorable Court the following:

*Nature of Action*

1. This case is an action for declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between First Mercury and the Defendants, i.e., whether First Mercury owes any

insurance coverage obligations to the Defendants in connection with claims asserted by Garmai Kennedy and Roger Kirschenbaum against Georgia Community Support and Solutions, Inc. ("GCSS"), including those in the lawsuit known as *Garmai Kennedy, Individually and as Surviving Parent of David Scott Kolubah, III and Roger Kirschenbaum, Administrator of the Estate of David Scott Kolubah, III v. Georgia Community Support and Solutions, Inc. d/b/a InCommunity,* State Court of DeKalb County, Civil Action No. 22A00209 ("Underlying Lawsuit").

## *Parties, Jurisdiction, and Venue*

2. Plaintiff First Mercury is a Delaware corporation with its principal place of business in New Jersey.

3. Defendant GCSS is a Georgia corporation with its principal place of business in DeKalb County, Georgia.

4. Defendant Garmai Kennedy resides and is domiciled in Henry County, Georgia, is a citizen of Georgia, and intends to remain a citizen of Georgia indefinitely.

5. Defendant Roger Kirschenbaum ("Kirschenbaum") resides and is domiciled in Fulton County, Georgia, is a citizen of Georgia, and intends to remain a citizen of Georgia indefinitely.

6. Kirschenbaum is suing GCSS in the Underlying Lawsuit in his capacity as the administrator of the Estate of David Scott Kolubah, III ("Kolubah").

7. Immediately prior to his death, Kolubah was domiciled in and was a resident and citizen of the State of Georgia, without any intent to become a citizen of or change his residence to any other jurisdiction.

8. Defendant GCSS is subject to personal jurisdiction and venue in this Court.

9. Defendant Garmai Kennedy is subject to personal jurisdiction and venue in this Court.

10. Defendant Roger Kirschenbaum is subject to personal jurisdiction and venue in this Court.

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

12. Plaintiff is a citizen of a different state than the Defendants.

13. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

14. This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, in that First Mercury is seeking a declaration from this Court regarding the parties' rights and obligations with respect to an insurance policy issued by First Mercury.

## *The Underlying Complaint*

15. Kennedy and Kirschenbaum filed their Complaint for Damages in the Underlying Lawsuit on January 19, 2022, naming Georgia Community Support and Solutions, Inc. d/b/a InCommunity as the defendant.

16. A true and accurate copy of that complaint is attached hereto as <u>Exhibit A</u>.

17. The Underlying Lawsuit was filed as a renewal action under OCGA § 9-2-61.

18. Kennedy and Kirschenbaum filed a previous action against GCSS and other defendants in the State Court of DeKalb County, Georgia, on January 6, 2017, and voluntarily dismissed that lawsuit on January 18, 2022.

19. In their January 19, 2022 complaint, Kennedy and Kirschenbaum alleged that Kolubah had developmental disabilities and autism, that GCSS (a non-profit company that provides services and support to people with development disabilities) was responsible for Kolubah's care, and that Kolubah suffered mistreatment and abuse at the hands of caregivers appointed by GCSS.

20. In their January 19, 2022 complaint, Kennedy and Kirschenbaum also alleged that Kennedy (Kolubah's mother) traveled to the home of Hyacinth Gordon (whom GCSS selected as Kolubah's caregiver) on August 15, 2014, and demanded

to see Kolubah; that she found him "lying in anguish;" and that Kolubah "was severely malnourished, dehydrated, emaciated, and had bruises over various parts of his body."

21.  In their January 19, 2022 complaint, Kennedy and Kirschenbaum also alleged that Kennedy removed Kolubah from the house and ordered that he be taken to Gwinnett Medical Center; that, as a result of mistreatment and abuse allegedly suffered at the hands of GCSS's appointed caregivers, Kolubah was hospitalized four separate times; and that Kolubah ultimately developed sepsis and died on January 13, 2015.

22.  In their January 19, 2022 complaint, Kennedy and Kirschenbaum also alleged that Georgia's Department of Behavioral Health and Developmental Disabilities opened an investigation "to determine if neglect occurred and if policies, procedures, and accepted standards of practice were followed;" appointed Jim Moon to investigate the matter; and that, on October 18, 2014, after completing his investigation, investigator Jim Moon found and concluded that "[n]eglect is substantiated against GCSS."

23.  In their January 19, 2022 complaint, Kennedy and Kirschenbaum also alleged that GCSS was negligent and its action and inactions were, in part, the factual cause of the injuries, harm, pain, suffering, damages, and ultimate death of Kolubah.

24. Kennedy and Kirshenbaum included the following counts in their January 19, 2022 complaint: Count I – Negligence, Count II – Punitive Damages, and Count III – Attorneys Fees.

*Admiral Insurance Company Policy*

25. Admiral Insurance Company ("Admiral") issued an insurance policy, with Policy Number FA000000017-02, to Georgia Community Support & Solutions, Inc.

26. A true and accurate copy of that policy ("Admiral Policy") is attached to this Complaint as Exhibit B.

27. The Admiral Policy excludes coverage for punitive damages. *See, e.g.,* Admiral policy [Ex. B], pp. 26, 33 (§ cc), 42, 44 (§ s).

*First Mercury Commercial Excess Liability Policy*

28. First Mercury issued a Commercial Excess Liability Policy, with Policy Number NY-EX-000003104-02, to Georgia Community Support & Solutions Inc., as the Named Insured.

29. A true, accurate, and certified copy of that policy ("First Mercury Policy") is attached to this complaint as Exhibit C.

30. The First Mercury Policy has a policy period of July 1, 2014, to July 1, 2015.

31. The First Mercury Policy includes a First Mercury Lead Excess Liability Coverage Form, which provides in part:

> The insurance provided under this Policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However, the coverage provided under this Policy will not be broader than that provided by the applicable "controlling underlying insurance."

32. The First Mercury Policy's Schedule of Underlying Insurance identifies the Admiral Policy, with Policy Number FA000000017-02, effective from July 1, 2014, to July 1, 2015, in addition to an Automobile Liability policy issued by Everest National Insurance Company.

33. The First Mercury Policy includes an Insuring Agreement under Section I, which provides in part:

> **SECTION I – COVERAGES**
>
> **1. Insuring Agreement**
>
> a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Policy applies.
>
> We will have the right and duty to defend the insured against any "suit" seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."
>
> When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages for "injury or damage."
>
> However, we will have no duty to defend the insured against any "suit" seeking damages for which insurance under this Policy does not apply.
>
> At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or "suit," for which we have the duty to defend.
>
> But:
>
> (1) The amount we will pay for "ultimate net loss" is limited as described in Section II – Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Policy. However, if the Policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Policy.

34. The First Mercury Policy includes several exclusions, including but not limited to the following:

> 2. **Exclusions**
>
> The following exclusions, and any other exclusions added by endorsement, apply to this Policy. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Policy.
>
> **Insurance provided under this Policy does not apply to:**
>
> * * *
>
> m. **Punitive or Exemplary Damages**
>
> Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are a multiple of, or in addition to, compensatory damages, including related interest or costs, whether or not such damages, related interest, or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages). If a "suit" shall have been brought against the insured for a claim falling within the coverage provided under the Policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

35. The First Mercury Policy includes an endorsement, adding an Assault and Battery exclusion to the policy. See First Mercury Policy [Ex. C], pp. 23-24.

36. The First Mercury Policy includes the following conditions:

> 5. **Duties In The Event Of a Claim, Event or "Suit"**
>
> a. You must see to it that we are notified as soon as practicable of an "event," regardless of the amount, which may result in a claim under this Policy. To the extent possible, notice should include:
>
>   (1) How, when and where the "event" took place;
>   (2) The names and addresses of any injured persons and witnesses; and
>   (3) The nature and location of any "injury or damage" arising out of the "event."
>
> b. If a claim is made or "suit" is brought against any insured, you must
>
>   (1) Immediately record the specifics of the claim or "suit" and the date received; and
>   (2) notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other insured involved must:
>
>   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>   (2) authorize us to obtain records and other information;
>   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.
>
> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

37. The First Mercury Policy defines "event" as "an 'occurrence,' offense, accident, act, or other event, to which the applicable 'controlling underlying insurance' applies."

38. The First Mercury Policy's conditions further provide:

> **9. Legal Action Against Us**
>
> No person or organization has a right under this Policy: To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or to sue us on this Policy unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, "controlling underlying insurer" and the claimant or the claimant's legal representative.

### *Notice to GCSS*

39. In August 2014, Gordon advised GCSS that Kennedy had visited Kolubah, said that he did not look right, and wanted him to go to the hospital.

40. In August 2014, GCSS knew that allegations of malnourishment and neglect had been made with respect to GCSS's care provided to Kolubah.

41. In August 2014, GCSS knew that a report had been made to the police, concerning purportedly improper care provided to Kolubah.

42. In August 2014, while Kolubah was hospitalized, Kennedy terminated GCSS's care of him.

43. Lisa Charles was employed by GCSS as a Host Services Manager throughout August 2014.

44. On August 18, 2014, Kennedy informed Lisa Charles that Kolubah was

malnourished, had bruises on his body, that Kennedy had not been allowed to visit Kolubah for two months, and that she did not want Kolubah to return to Gordon's home.

45. After Kolubah was removed from Gordon's home and taken to the hospital, Kennedy took Kolubah to live with her rather than returning him to the care of GCSS.

46. In September 3, 2014, GCSS received a letter from attorney Kevin Toole dated September 3, 2014, stating that his office had accepted representation of David Kolubah and Garmai Kennedy "with regard to allegations of negligent care received by David Kolubah" and requesting insurance information.

47. A true and accurate copy of that September 3, 2014 letter is attached to this complaint as <u>Exhibit D</u>.

48. That letter included an affidavit signed by Kevin Toole, stating, "I represent David Kolubah and Garmai Kennedy in connection with a claim for injuries and damages David sustained in an incident which occurred on or about August 15, 2014."

49. By September 8, 2014, GCSS provided Admiral with a copy of the September 3, 2014 letter from attorney Kevin Toole.

50. By November 2014, GCSS was aware that Georgia's Department of Behavioral Health and Developmental Disabilities had found neglect on the part of both Gordon and GCSS with respect to the care of Kolubah.

51. In January 2015, GCSS was advised that Kolubah passed away on January 13, 2015, from complications due to neglect.

52. By March 2015, Admiral appointed attorney Wade K. Copeland to serve as defense counsel for GCSS with respect to the claims of Kennedy related to Kolubah.

*Communications with First Mercury*

53. First Mercury first received notice of the August 2014 event involving Kolubah on June 17, 2015.

54. No person or entity notified First Mercury of any event involving Kolubah or any related claims until June 17, 2015.

55. GCSS has sought coverage from First Mercury for the Underlying Lawsuit and the claims of Kennedy and Kirschenbaum.

56. On July 13, 2015, Crum & Forster (through United States Fire Insurance Company, the authorized claims administrator for First Mercury) sent a reservation of rights letter to GCSS, concerning the First Mercury Policy and coverage, or lack thereof, for the claims related to GCSS's alleged conduct and

Kolubah's alleged resulting injuries.

57. A true and accurate copy of the July 13, 2015 reservation of rights letter is attached hereto as <u>Exhibit E</u>.

58. The July 13, 2015 reservation of rights letter was received by GCSS on July 17, 2015.

59. On June 14, 2017, United States Fire Insurance Company (on behalf of First Mercury) sent a supplemental reservation of rights letter to GCSS.

60. A true and accurate copy of the June 14, 2017 reservation of rights letter is attached hereto as <u>Exhibit F</u>.

61. GCSS received the June 14, 2017 reservation of rights letter in June 2017.

*<u>Declaratory Judgment</u>*

62. First Mercury is in a position of uncertainty with respect to its rights, status, and other legal relations as to the First Mercury Policy and its obligations (if any) with respect to the Defendants and the Underlying Lawsuit.

63. The First Mercury Policy does not cover any of the claims made in the Underlying Lawsuit against GCSS and will not cover any damages awarded therein, due to the failure of GCSS to comply with the First Mercury Policy's terms and conditions with respect to the August 2014 event and the claims related to Kolubah.

64. First Mercury was not notified as soon as practicable of the August 2014 event involving Kolubah.

65. GCSS breached the First Mercury Policy's condition requiring GCSS see to it that First Mercury receive written notice of any claim brought against it as soon as practicable.

66. GCSS breached the First Mercury Policy's condition requiring GCSS to immediately send First Mercury copies of any demands, notices, summonses or legal papers received in connection with a claim or suit brought against any insured.

67. First Mercury is entitled to a declaratory judgment that GCSS is not covered under the First Mercury Policy for the claims of Kennedy and Kirschenbaum and the Underlying Lawsuit, because conditions precedent for coverage under the First Mercury Policy were breached, including the duties to provide timely notice, and for the other reasons set forth herein or provided in the First Mercury Policy.

68. The First Mercury Policy also does not cover any of the claims made in the Underlying Lawsuit against GCSS and will not cover any damages awarded against GCSS therein, because those claims and damages do not qualify for coverage under the First Mercury Policy's Insuring Agreements and/or because exclusions in the First Mercury Policy preclude coverage.

69. First Mercury has no duty to defend or indemnify GCSS with respect to the Underlying Lawsuit, as the "controlling underlying insurance" has not been exhausted.

70. The First Mercury Policy does not cover the claims of Kennedy and Kirschenbaum or the Underlying Lawsuit, to the extent they seek to recover damages for "injury or damage" based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, or in any way connected to, or in the sequence of events, involving any actual or alleged "assault" and/or "battery," as those terms are defined in the First Mercury Policy.

71. The First Mercury Policy's Assault and Battery Exclusion precludes coverage for some or all of the claims against GCSS in the Underlying Lawsuit.

72. The punitive damages exclusions in the Admiral Policy and the First Mercury Policy precludes coverage for any punitive damages in the Underlying Lawsuit.

73. First Mercury owes no duty to indemnify GCSS for any award of punitive damages in the Underlying Lawsuit.

74. Other terms and provisions in the First Mercury Policy and the Admiral Policy may limit or preclude coverage under the First Mercury Policy.

75. First Mercury relies upon and reserves its rights to rely upon other

policy provisions or legal principles discovered during this action that also may limit or exclude coverage.

WHEREFORE, Plaintiff First Mercury Insurance Company prays:

(a) That each Defendant be required to respond to the allegations set forth in this *Complaint for Declaratory Judgment*;

(b) That this Court declare that First Mercury has no duty to defend or indemnify the Defendants for the August 2014 event, the claims of Kennedy and Kirschenbaum, the Underlying Lawsuit, or any judgments or awards in that lawsuit;

(c) For such other relief as this Court deems just and proper.

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

/s/ Kim M. Jackson
Ga. State Bar No. 387420

200 Ashford Center North
Suite 500
Atlanta, Georgia 30338-2680
(770) 391-9100
kjackson@boviskyle.com
rbryant@boviskyle.com

/s/ W. Randal Bryant
Ga. State Bar No. 092039

*Counsel for Plaintiff First Mercury Insurance Company*